# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| AMBER MARCELLA B.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 20-1296-JWL |
| KILOLO KIJAKAZI,[2] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to Title XVI, sections 1602 and 1614 of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of Plaintiff's allegations of symptoms, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I.     Background

Plaintiff protectively filed an application for SSI benefits on June 25, 2018.  (R. 10).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in evaluating her allegations of symptoms in accordance with Social Security Ruling (SSR) 16-3p.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R.

§ 416.920(e).  This assessment is used at both step four and step five of the sequential

evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining

at step four whether, considering the RFC assessed, the claimant can perform her past

relevant work; and at step five whether, when also considering the vocational factors of

age, education, and work experience, she is able to perform other work in the economy.

Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the

burden is on Plaintiff to prove a disability that prevents performance of past relevant

work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the

burden shifts to the Commissioner to show that there are jobs in the economy which are

within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th

Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

**II.    Discussion**

Plaintiff claims the ALJ's reasons for discounting her allegations of symptoms

were not supported by substantial evidence.  She argues the ALJ concluded Plaintiff's

"primary reason for not working was lack of childcare" and erroneously concluded her

allegations were inconsistent with her part-time work and with her noncompliance with

prescribed medications.  (Pl. Br. 10).  She argues the ALJ substituted her lay opinion in

this regard for the medical opinions of three mental health care providers, none of whom

opined Plaintiff's "inability to work was based on lack of childcare or noncompliance."

Id.  She argues, "the record did not show that [Plaintiff]'s work activity as an aide to her

4

mother was inconsistent with her allegations." And, "The ALJ's failure to provide reasons supported by substantial evidence to discount [Plaintiff]'s allegations was in violation of SSR 16-3p and requires remand." (Pl. Br. 10). She explains how, in her view, the evidence supports and is consistent with her allegations of symptoms. Id. at 10-11. She argues the ALJ's conclusion Plaintiff's mental impairments did not prohibit her from maintaining full-time employment "constituted no more than substituting her own layperson opinion [sic] for the medical professionals'." Id. at 12 (citing Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004)).

Plaintiff explained why, in her view, the record does not support "[t]he ALJ's heavy reliance on her perception that lack of childcare was the primary reason [Plaintiff] was not working" and her finding Plaintiff's part-time work suggested greater capabilities than she alleged. Id. at 13-14. She argued the ALJ erred in relying on Plaintiff's non-compliance with medication because she did not apply the Frey test in her evaluation. Id. at 15-16 (citing Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987); and Heggie v. Berryhill, No. 17-1013-JWL, 2018 WL 658712, at *4 (D. Kan. Feb. 1, 2018)). She argued the ALJ "failed to explain how that evidence supported or conflicted with [Plaintiff's] allegations." Id. at 16.

Plaintiff argues, "Rather than credit the consistency and supportability of [the medical opinions of Dr. Brooks, Dr. Kent, and Mr. McNally] with the record, the ALJ substituted her own layperson opinion [sic] for their medical opinions, in error." Id. at 17. Finally, Plaintiff argues that because her alleged onset date was the day after a prior unfavorable decision by the SSA which precluded any earlier alleged onset date, the fact

the date did not correlate to a specific impairment-related reason was not an appropriate basis to discount her allegations of symptoms.  (Pl. Br. 17-18).

The Commissioner argues the reasons the ALJ gave to discount Plaintiff's allegations of symptoms are legally sound and supported by the evidence.  (Comm'r Br. 10).  She argues, "these reasons included the medical evidence and Plaintiff's continued ability to work part-time, other daily activities, possible drug-seeking behavior, failure to take prescribed medications, and generally poor work history."  Id.  She argues the ALJ appropriately relied on normal medical findings and although "some examinations did show abnormalities … Plaintiff has not demonstrated how such findings required additional work-related limitations beyond the ALJ's already-restrictive RFC for a reduced range of unskilled, light work."  Id. at 11.  She argues the Tenth Circuit has recognized certain situations in which the Frey test need not be applied and this case is such a situation.  Id. at 13-14 (citing Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)).

The Commissioner points out the ALJ also relied on two non-impairment related reasons Plaintiff sought disability payments—to get her student loans discharged, and to alleviate child-care issues with her minor children.  She argues it is the ALJ's duty to draw inferences from the evidence and these inferences are reasonable and supported by the record evidence.  Id. at 15-16.

The Commissioner also argues the ALJ properly and adequately articulated her evaluation of the prior administrative medical findings and medical opinions in the record.  Id. at 16-18.  She argues the ALJ did not substitute her lay opinion for the

6

medical opinions of Dr. Brooks, Dr. Kent, and Mr. McNally, "but rather exercised her duty to evaluate the conflicting evidence of record." (Comm'r Br. 18).

In her Reply Brief, Plaintiff reiterated her earlier arguments. Moreover, she argued that the ALJ's consideration of her childcare issue was the ALJ's "heavy focus" and "was the driving force behind her assessment of [Plaintiff]'s alleged limitations." (Reply 3). Plaintiff argues, "no medical professional opined Brewer's barrier to employment was lack of childcare. Instead, they opined her mental impairments prohibited her from obtaining and maintaining full-time employment." Id.

## A.    The ALJ's Findings

The ALJ laid out the standard she applied in evaluating Plaintiff's allegations of symptoms from her impairments. (R. 16-17) (citing 20 C.F.R. §416.929 and SSR 16-3p). The ALJ summarized Plaintiff's allegations, id. at 17, and stated her finding that Plaintiff's allegations "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. at 18. She summarized her reasons for discounting Plaintiff's allegations: "significant work activity after the alleged onset date; no impairment related event to correlate to the alleged onset date; poor work history; inconsistencies in the treatment record; and activities of daily living." Id.

As Plaintiff suggests, the ALJ explained her consideration of Plaintiff's childcare issues:

> Although more than twelve months prior to the claimant's protective filing date, I note that in July 2016 the claimant reported that she enjoyed working at an ice skating rink because she could bring her children to work

with her (B9F/26 [(R. 482)]).  At the hearing, the claimant denied that the ability to bring her children to work allows her to work, but the claimant's work activity as a caretaker for her mother, in which she can bring her children, suggests otherwise.  I specifically note that the longest jobs in her recent job history are ones in which she is able to bring her children.  This gives the appearance that the claimant's child care issues appear to be a non-impairment related reason for not working full time.

(R. 18).

The ALJ explained her consideration of the medical opinions and prior administrative medical findings.  (R. 21-22).  She found the medical opinions of Dr. Brooks,[3] Dr. Kent, and Mr. McNally unpersuasive, and the prior administrative medical findings of Dr. Duff and Dr. Akeson persuasive.  Id.  The ALJ discounted Dr. Brooks's opinions because although the opinion was dated July 3, 2018, the July 3, 2018 treatment note indicated the opinion was completed to help Plaintiff appeal her disability case and get her student loan discharged.  Id. at 21 (citing Ex. B2F/1 (R. 380)).  She also found Dr. Brooks's opinion inconsistent with the treatment note dated July 20, 2018 which indicated Plaintiff was restarting a relationship.  Id.

She discounted Dr. Kent's opinion because it based Plaintiff's ability to persist "entirely on subjective allegations, … and is not supported by the examination."  Id.  She also found the opinion "inconsistent with evidence that the claimant is working as a caretaker for her mother, and is able to care for her four children," and "inability to

---

[3] The ALJ identified Dr. Brooks as "Lindsey Brooles, Psy.D."  (R. 21).  However, this is clearly a typographical error as the exhibit she cites to is indexed as progress notes from "Brooks Lindsey PsyD" and the Medical Source statement is captioned that of "Lindsey Brooks, Psy.D."  (R. 384).  However, the printed name under the signature on the Medical Source Statement can be viewed to state "Lindsey Brooles, Psy.D."  (R. 385).

interact with the general public is inconsistent [with] and not supported by evidence that the claimant was able to work as a bell-ringer for the Salvation Army, which demands regular interaction with the general public." (R. 21).

The ALJ found Mr. McNally's opinion unpersuasive for three reasons:

> This opinion is not supported by the claimant's activities of daily living, specifically the ability to work as a caretaker for her mother, which involves direction supervision [sic], and going to the grocery store. Marked limitations in social interaction are inconsistent with evidence that the claimant was able to work as a Salvation Army bell-ringer. Moderate to marked limitations in understanding and remembering are inconsistent with evidence from Mr. McNally's office that the claimant has good/normal memory and fair insight.

(R. 22) (record citation omitted).

On the other hand, the ALJ found the prior administrative medical findings persuasive. She found Dr. Duff's medical opinion persuasive because it is supported by and consistent with Plaintiff's activities of daily living, caring for her children and working as a caretaker for her mother, and by Plaintiff's "mostly normal physical examinations." Id. She found Dr. Akeson's psychological opinion persuasive for numerous reasons:

> Dr. Akeson has program knowledge. This opinion is based on a review of the available medical evidence of record. This opinion is consistent with, and supported by evidence that the claimant is able to perform some work as a caretaker, and is able to care for her children. Social limitations are consistent with the claimant's testimony that she does not like to be around people and has an anxious affect.

Id.

The ALJ explained the rationale for the RFC she assessed:

I find the claimant has the above residual functional capacity assessment, which is supported by the medical evidence of record and opinion evidence as discussed above.  The claimant testified that she works as a caretaker, and previously worked as a Salvation Army bell-ringer.  Both of these jobs require substantial standing and walking.  Beyond recent injections in her back the claimant has had minimal treatment for her back pain that she reports started many years ago, and physical examinations are generally normal.  Based on her hearing testimony, the claimant's primary barrier to employment is her social anxiety, which the above social limitations account for.  Limitations to simple work as described encompass the allegations that are supported by the record.

(R. 22) (record citation omitted).

**B.    Analysis**

Plaintiff's argument that the ALJ concluded Plaintiff's "primary reason for not working was lack of childcare," (Pl. Br. 10) is not supported by the record.  As noted above, the ALJ found Plaintiff's "primary barrier to employment is her social anxiety." While the ALJ considered and discussed Plaintiff's childcare issue, she did not even include it in her summary of reasons to discount Plaintiff's allegation of symptoms— "significant  work activity after the alleged onset date; no impairment related event to correlate to the alleged onset date; poor work history; inconsistencies in the treatment record; and activities of daily living."  (R. 18).  Rather, she relied on Plaintiff's poor work history and merely pointed out that Plaintiff's "child care issues appear to be a non-impairment related reason for not working _full time_." Id. (emphasis added).  The evidence supports this finding, and it is not error for the ALJ to rely upon it.

Plaintiff's argument, the ALJ erred in relying on non-compliance with medication because he did not apply the _Frey_ test, also fails.  Plaintiff does not deny that non-compliance with service plans or prescriptions, as found by the ALJ, is supported by the

record evidence.  Moreover, the ALJ did not rely upon this fact alone as a factor to discount Plaintiff's allegations of symptoms.  Rather, it is one of several "inconsistencies in the treatment record" (R. 18) relied upon by the ALJ.

As Plaintiff suggests, in 1987 the Tenth Circuit stated what has become known as "the Frey test:"  that, "In reviewing the impact of a claimant's failure to undertake treatment, ... [the court] consider[s] four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse."  Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987).  As the Commissioner suggests, in 2000, the Tenth Circuit visited a similar issue in which the ALJ discounted the plaintiff's allegations, in part, because of a failure to take pain medication for allegedly severe pain.  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  The plaintiff argued this finding was error because "he took pills his friends gave him," although he did not know what he was taking and did not indicate the frequency with which this occurred, and he argued that the Frey test should have been applied.  Id. The court found the Frey test inapposite "because Frey concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment."  Id.  The court explained its finding:

> The ALJ here did not purport to deny plaintiff benefits on the ground he failed to follow prescribed treatment.  Rather, the ALJ properly considered what attempts plaintiff made to relieve his pain--including whether he took pain medication--in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling.

Id.  Thus, the Tenth Circuit has recognized two scenarios, a failure to undertake treatment, wherein the Frey test must be applied, and a failure to pursue treatment to relieve symptoms wherein the Frey test need not be applied.  Here, the Commissioner argues the ALJ's rationale is based on the extensiveness of Plaintiff's attempts to obtain relief from her symptoms by rejecting her medications and suggests the holding in Qualls applies.  However, the ALJ also found that Plaintiff failed to comply with service plans.  (R. 21) (citing Ex. B10F/10, R. 494).  The court might still find that Qualls applies because Plaintiff did not follow the service plans in an attempt to obtain relief from her symptoms.

Nevertheless, in 2018 the Commissioner issued SSR 18-3p providing guidance about how the SSA applies its "failure to follow prescribed treatment" policy from 20 C.F.R. §§ 404.1530 and 416.930.  The Ruling explains that the SSA

> will determine whether an individual has failed to follow prescribed treatment only if all three of the following conditions exist:
>
> 1. The individual would otherwise be entitled to benefits based on disability or eligible for blindness benefits under titles II or XVI of the Act;
>
> 2. We have evidence that an individual's own medical source(s) prescribed treatment for the medically determinable impairment(s) upon which the disability finding is based; and
>
> 3. We have evidence that the individual did not follow the prescribed treatment.

SSR 18-3p, 2018 WL 4945641, *2-3 (SSA Oct. 2, 2018) (emphasis added).

Here, the first condition has not been met.  The ALJ's finding Plaintiff had "poor compliance with service plans or prescriptions" (R. 21) was but one among several inconsistencies in the treatment record upon which she relied to discount Plaintiff's

allegations of symptoms.  In these circumstances it becomes clear the ALJ was relying on this fact as but one inconsistency in Plaintiff's allegations, and even absent that fact she would not have found Plaintiff disabled and there would be no reason to consider whether benefits should be denied because of a failure to follow prescribed treatment.  Plaintiff's appeal to this court's decision in Heggie does not require a different result because that case was decided February 1, 2018, eight months before the Commissioner issued SSR 18-3p, clarifying the requirement for considering a failure to follow prescribed treatment.

Plaintiff's argument the ALJ substituted her lay opinion for the medical opinions of Dr. Brooks, Dr. Kent, and Mr. McNally is similarly flawed.  Plaintiff claims the ALJ substituted her opinion for the medical opinions because none of these medical sources opined she was unable to work because of lack of childcare or non-compliance with medication.  This argument fails for at least two reasons.  First, none of these medical sources stated an opinion whether Plaintiff could work because of her childcare issues (which is not a medical opinion in any case).  20 C.F.R. § 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions."). And none of these sources stated an opinion whether Plaintiff could work despite treatment non-compliance.

Finally, and most importantly, it is the ALJ's duty, not that of a medical source, to assess RFC and to evaluate the claimant's allegations of symptoms.  Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."

Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 416.945(a). Moreover, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. §§ 416.927(e)(2), 416.946.

Plaintiff's argument it was error for the ALJ to hold her finding of "no specific impairment related reason for the alleged onset date of October 5, 2017" against Plaintiff misunderstands the law. Plaintiff appears to acknowledge that she could not choose an earlier onset date because of the doctrine of administrative res judicata. (Pl. Br. 17) ("application could only allow for consideration of benefits as far back as the day after the prior unfavorable decision under the doctrine of res judicata"). However, the doctrine of administrative res judicata in this case rests upon the principle that as a matter of law Plaintiff was not disabled through October 4, 2017. Therefore, the fact there is "no specific impairment related reason for the alleged onset date of October 5, 2017" is a fact which is inconsistent with Plaintiff's allegation that she became disabled beginning that date, and it is not error for the ALJ to rely on that inconsistency. This is so especially because it is only one of a number of inconsistencies relied upon by the ALJ.

The ALJ stated her reasons for discounting Plaintiff's allegations of symptoms and the court finds those reasons are supported by substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

<u>Perales</u>, 402 U.S. at 401. Plaintiff has not shown record evidence which compels a contrary finding.  The court finds no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated November 15, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**